Matter of Fonseca v Platinum Carpentry Inc. (2025 NY Slip Op 03231)

Matter of Fonseca v Platinum Carpentry Inc.

2025 NY Slip Op 03231

Decided on May 29, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:May 29, 2025

CV-23-2290
[*1]In the Matter of the Claim of Henry Fiallos Fonseca, Claimant,
v
Platinum Carpentry Inc., Appellant, and United Wisconsin Insurance Co., Respondent. Workers' Compensation Board, Respondent.

Calendar Date:April 21, 2025

Before:Egan Jr., J.P., Reynolds Fitzgerald, Fisher, Powers and Mackey, JJ.

Kaufman Dolowich, White Plains (Belino Voshtina of counsel), for appellant.
Cipriani & Werner, PC, Iselin, New Jersey (Brandon W. Sawyer of counsel), for United Wisconsin Insurance Co., respondent.
Letitia James, Attorney General, New York City (Donya Fernandez of counsel), for Workers' Compensation Board, respondent.

Reynolds Fitzgerald, J.
Appeal from a decision of the Workers' Compensation Board, filed May 4, 2023, which ruled, among other things, that claimant was not an employee covered by a workers' compensation insurance policy furnished through United Wisconsin Insurance Co.
Claimant, a carpenter, has an established claim for various work-related injuries that were sustained when part of a ceiling collapsed on him — causing him to fall from a ladder. At the time of his injuries, claimant testified, he was performing remodeling work for and employed by Platinum Carpentry Inc. Platinum, in turn, had a contract with Cornerstone Underwriters, LLC — a professional employer organization (hereinafter PEO) (see Labor Law § 916 [3], [4]) — to provide workers' compensation coverage to employees leased from Cornerstone to Platinum, and such coverage was furnished through United Wisconsin Insurance Co. (hereinafter UWIC). The contract between Platinum and Cornerstone contained several provisions outlining the requirements that had to be met in order for Platinum's employees to have a leased or co-employment relationship with Cornerstone, including that Platinum provided certain hiring paperwork to Cornerstone at least 48 hours before the prospective employee started work. Failure to comply would result in the nonreported worker remaining an employee of Platinum alone, and such individual would not be covered under Cornerstone's workers' compensation policy.
Following claimant's injury, UWIC denied coverage contending, among other things, that claimant was not listed on Platinum's payroll and, hence, was not covered under the subject policy. At the conclusion of the hearing that followed, a Workers' Compensation Law Judge found that, notwithstanding the language embodied in the PEO agreement, claimant was a dual employee of Platinum and Cornerstone and UWIC was the proper carrier. Upon administrative review, the Workers' Compensation Board modified that decision finding, among other things, that claimant was not a leased/worksite employee and, therefore, was not covered under UWIC's policy. The Board placed the Uninsured Employers Fund, which previously had been discharged, back on notice and remitted the matter for, among other things, the imposition of appropriate penalties against Platinum. This appeal by Platinum ensued.
Where, as here, a PEO enters into an agreement with a client, the PEO assumes responsibility for, among other things, "secur[ing] and provid[ing] required workers' compensation coverage for its worksite employees either in its own name or in its client's name" (Labor Law § 922 [3] [c]; see Labor Law § 916 [3] [d]; Matter of Gaylord v Buffalo Transp., Inc., 195 AD3d 1200, 1201-1202 [3d Dept 2021]). A "[w]orksite employee" is defined, in relevant part, as "a person having an employment relationship with both the [PEO] and the client" (Labor Law § 916 [6]) and, by statute, both the client and the PEO are deemed to be the employer for purposes of workers' compensation [*2]coverage (see Labor Law § 922 [4]; Matter of Brown v Buffalo Transp., Inc., 222 AD3d 1147, 1150 [3d Dept 2023]; Matter of Cardona v DRG Constr. LLC, 196 AD3d 988, 989 [3d Dept 2021]). "As a general proposition, workers' compensation insurance policies extend to all employees who are employed during the policy period in question and not shown to be excluded" (Matter of Brown v Buffalo Transp., Inc., 222 AD3d at 1150 [internal quotation marks and citations omitted]). Hence, Cornerstone and UWIC "bore the burden of establishing that claimant was not a leased employee covered by the underlying workers' compensation policy" (id.; see Matter of Cardona v DRG Constr. LLC, 196 AD3d at 989; Matter of Gaylord v Buffalo Transp., Inc., 195 AD3d at 1203).
The client payroll history for Platinum, which purports to represent the complete list of employees covered under the PEO agreement and, hence, the subject workers' compensation policy, did not include claimant's name. Although such omission would — standing alone — be insufficient to establish that claimant was not in fact a leased/worksite employee (see Matter of Cardona v DRG Constr. LLC, 196 AD3d at 989; Matter of Gaylord v Buffalo Transp., Inc., 195 AD3d at 1202-1203), the proof tendered by Cornerstone and UWIC was not limited to this document. As noted previously, the agreement between Cornerstone (as the PEO) and Platinum (as the client) expressly obligated Platinum to provide Cornerstone "with all the required hiring paperwork" at least 48 hours prior to the start of a prospective employee's work. Pursuant to section 5 (d) of the PEO agreement, if such information was not provided in a timely manner, the individual in question would not be deemed an employee of Cornerstone and, therefore, would not be covered under the workers' compensation policy. Rather, nonreported workers would remain employees of the client, i.e., Platinum, which would "assume[ ] full responsibility for workers' compensation claims."
Platinum's representative candidly acknowledged that Platinum did not notify Cornerstone of claimant's employment because claimant, possessed of only an individual taxpayer identification number, was not deemed to be on Platinum's payroll. Instead, claimant, who was paid directly by Platinum, was issued a 1099 form, and the representative conceded that Cornerstone was not given information regarding Platinum's "1099 employees." Although the representative "thought" that 1099 employees such as claimant would be covered under the PEO agreement, this assumption is belied by the terms of the agreement itself and, in any event, the representative admitted that he was aware that if Platinum did not advise Cornerstone of a prospective employee and complete the required enrollment process, such individual would not be covered under the workers' compensation policy. Similar testimony was offered by Cornerstone's claims representative, who confirmed that claimant was not an enrolled employee and that Cornerstone [*3]did not provide workers' compensation to individuals who, like claimant, received a 1099 form.
"[A]s the sole arbiter of witness credibility, the Board has broad authority to resolve factual issues based on credibility of witnesses and draw any reasonable inference from the evidence in the record" (Matter of Saporito v Office of Ct. Admin., 217 AD3d 1031, 1033 [3d Dept 2023] [internal quotation marks and citations omitted]). The foregoing proof, in our view, constitutes substantial evidence to support the Board's finding that claimant was not a leased/worksite employee of Cornerstone and, therefore, was not covered under the relevant workers' compensation policy (see Matter of Brown v Buffalo Transp., Inc., 222 AD3d at 1151; compare Matter of Cardona v DRG Constr. LLC, 196 AD3d at 989; Matter of Gaylord v Buffalo Transp., Inc., 195 AD3d at 1203). Claimant's remaining arguments on this point, to the extent not specifically addressed, have been examined and found to be lacking in merit. Accordingly, the Board's decision is affirmed.
Egan Jr., J.P., Fisher, Powers and Mackey, JJ., concur.
ORDERED that the decision is affirmed, without costs.